[ORAL ARGUMENT NOT SCHEDULED]
No. 22-5139

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

BLACK LIVES MATTER D.C., et al,

Plaintiffs-Appellants,

v.

WILLIAM P. BARR, et al.,

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the District of Columbia

_____

**BRIEF FOR APPELLEE SEAN KELLENBERGER**
_____

Christopher A. Zampogna
Zampogna, P.C.
1776 K St, NW Ste 700
Washington, DC 20006
caz@zampognalaw.com
(202)223-6635

CERTIFICATE AS TO PARTIES, RULING AND RELATED CASES

A. Parties and Amici

Plaintiff's-appellants in No. 22-5133 are Radii Buchanan; Ann Dagrin; and Lindsay Field.  Plaintiffs-appellants in No. 22-5139 are Black Lives Matter D.C.; Toni Sanders; J.N.C. through his mother Demetria Bright; Kishon McDonald; Garrett Bond; Keira Scallan; Lia Potent; Dustin Foley; and E.X.F., through her father Dustin Foley.

Defendants-appellees in No. 22-5133 are William P. Barr; Gregory T. Monaghan; Mark Adamchik; Russell Fennelly; and Cara Seiberling.  Defendants-appellees in No. 22-5139 are William P. Barr; Mark Adamchik; Jonathan Daniels; Sean Cox; Luis Feliciano; Jeffrey Hendrickson; Nicholas Jarmuzewski; Bryan McDonald; Cara Seiberling; Lawrence Sinacore; Thomas LoCasio; and Sean Kellenberger.  The other defendants named in the complaints are Donald J. Trump; Mark T. Esper; William J. Walker; James M. Murray; Michael Carvajal; Peter Newsham; Mr. Sobering; Anthony Alioto; S. Buchanan; Jeffrey Carroll; Mr. Hargrove; C.W. Meyer; Clifton I. Murphy; Thomas C. Payne; Mr. Taylor; Daniel M. Thau; Anthony A. Willis; Wayne Vincent; Ryan Black; Ryan Allen; John and Jane Does 1-50; John and Jane Poes 1-50; John and Jane Does 1-50; John Does 1-100; John Does 1-20; John Does 1-50.

Amici in this Court are Institute for Justice and Foundation for Individual Rights and Expression; Rev. Virginia Gerbasi; Rev. Julia Joyce Domenick; Interfaith Alliance Foundation; Foundry United Methodist Church; Rev. Dr. Amy Butler; Rt. Rev. John Bryson Chane, D.D.; Rev. Gayle Fischer-Stewart, Ph.D.; Rev. Ginger E. Gaines-Cirelli; Rev. Gayle Fisher-Stewart, Ph.D.; Rev. Giddings Ivory; Rev. Glenna J. Huber; Rev. Linda Kaufman; Rt. Rev. Chilton R. Knudsen; Pastor William H. Lamar IV; Rev. Ledlie I. Laughlin; Rev. Kent Marcoux; Rev. Michele H. Morgan; Rabbi Jonathan Roos; Rev. David Wacaster; Rev. Jim Wallis; John Wimberly; Rabbi Daniel G. Zemel; and former Representatives Jason Almire Les AuCoin, Doug Bereuter, Howard Berman, Bruce Braley, William Brodhead, Yvonne Burke, Thomas Campbell, Lois Capps, Mike Capuano, Tony Coelho, Sam Coppersmith, Mickey Edwards, William Enyart, Barney Frank, Tom Harkin, Paul W. Hoes, Steve Israel, Richard Lehman, Mel Levine, Tim Mahoney, Paul McHale, Jim Moran, Bruce Morrison, Leon Panetta, Harley Rouda, Max Sandlin, Claudine Schneider, Patricia Schroeder, Chris Shays, Gerry Sikorski, Peter Smith, Ricahard Stallings.

Amici who appeared in the District Court are Concerned Legal Academics and Historians, International Center for Advocates Against Discrimination; International Human Rights Clinic; University of Virginia School of Law; Leitner Center for International law and Justice, Fordham University School of Law;

Robert and Helen Bernstein Institute for Human Rights, New York University School of Law; William J. Aceves; Charles Avery, Jr.; Margaret Burnham; Claiborne Carson; Hazel Dukes; Mary Frances Berry; Wade Henderson; Judith Heumann; Delores Huerta; Jesse Jackson Sr.; Benjamin Jealous; Marting Luther King, III; Marc Morel, Richard Morrisroe; Ruby Sales; Marian Wright Edelman; Carlos M. Vazquez; Ana Bernstein; James Pfander; Stephen I. Vladeck; and Reporters Committee for Freedom of the Press.

B.  Rulings Under Review

The rulings under review were entered in *Buchanan v. Trump*, No. 20-cv-1542 (D.D.C.) and *Black Lives Matter D.C. v. Trump*, No. 20-cv-1469 (D.D.C.), by the Honorable Dabney L. Friedrich.  The later is the only related one to Officer Kellenberger. On June 21, 2021, an order and opinion granting motions to dismiss in part (J.A. 183-236), and the May 16, 2022 order entering partial final judgment (J.A. 237-42) was issued. The district court's opinion granting the motions to dismiss in part is available at *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15 (D.D.C. 2021).

C. Related Cases

These cases were not previously before this court, and counsel not aware of

other pending related cases.

/s/*Christopher A. Zampogna*

Christopher A. Zampogna

## TABLE OF CONTENTS

Table of Authorities ……………………………………………... 7

Statement of Jurisdiction …………………………………………... 9

Statement of the Case …………………………………………... 9

    Statutory Background …………………………………………… 9

    Factual Background ……………………………………………… 10

    Procedural History and Background ………………………………… 13

Summary of Argument …………………………………………... 16

Standard of Review …………………………………………... 16

The District Court's Decision Properly Reasoned that the Kellenberger
    Claim Must Be Dismissed ……………………………………… 16

    Presidential Security, A New Factor, Warrants Dismissal …………… 16

    Kellenberger Adopts the Government's Argument in Total in
        Government Brief that the Judicially Created *Bivens* Remedy
        Should Not Be Extended in this Novel Context …………… 20

    Kellenberger Only Addresses the Claims Raised by the Appellants
        Brief. Any Others, Which Include But Are Not Limited To
        Qualified Immunity, Standing, and Necessary Party to
        Litigation Need Not Be Addressed …………………………….. 21

Conclusion …………………………………………………………… 21

TABLE OF AUTHORITIES

**Cases**

*Egbert v. Boule*, 142 S.Ct. 1793, 1806 (2022).........................................................15

*Fox v. Government of D.C.*, 794 F.3d 25, 29 (D.C. Cir. 2015) ...............................19

*Hernandez v. Mesa*, 140 S.Ct. 735, 743, 206 L.Ed.2d 29 (2020)...........................12

*In re Sealed Case*, 148 F.3d 1073, 1078 (D.C. Cir. 1998) .....................................15

*Quaker Action Gap. v. Morton*, 516 F.2d 717 (D.C. Cir. 1975)........... 14, 16, 17, 18

*True the Vote, Inc., v. Internal Revenue Serv.*, 831 F.3d 551, 555 (D.C. Cir. 2016) .................................................................................................................................14

*Watts v. United States*, 394 U.S. 705, 707, 708 (1969) ...........................................14

*White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1532-33 (D.C. Cir. 1984)........................................................................................................................14

*Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017)...........................12

**Statutes**

18 U.S.C. § 1752...........................................................................................................8

54 U.S.C. § 102701....................................................................................................7, 8

D.C. Code Ann. § 5-2-1 ................................................................................................8

**Other Authorities**

Mayor's Order 2020-68 ...............................................................................................15

**Regulations**

36 C.F.R. § 1.5 ...............................................................................................8

36 C.F.R. § 2.31 .............................................................................................8

36 C.F.R. § 2.32 .............................................................................................8

36 C.F.R. § 2.34 .............................................................................................8

36 C.F.R. § 50.19 .........................................................................................16

Designation of Officers or Employees, 41 Fed. Reg. 44,876 (Oct. 13, 1976) ..........7

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 13331. J.A. 82, ¶ 49; J.A. 141, ¶ 42.  The district court dismissed the claims against the federal officers in their individual capacities on June 21, 2021. J.A. 184-85. Under the Federal Rule of Civil Procedure 54(b), the district court entered final judgment on May 16, 2022.  J.A. 242-42. Plaintiffs filed timely notices of appeal on May 16, 2022; J.A. 243-46.  This court has jurisdiction pursuant to 28 U.S.C. § 1291.

This is an appeal from a judgment of dismissal in the District of Columbia Circuit Court (Friedrich, D) entered on May 16, 2022.

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

Congress has charged the Secretary of the Interior with responsibility for "maintaining law and order and protecting individuals and property" within areas such as Lafayette Park. 54 U.S.C. § 102701(a)(1).  The Secretary is empowered to designate officers and employee of the Department of Interior and other agencies to perform law-enforcement activities.  See id. § 102701(a),(b)(1); see also Designation of Officers or Employees, 41 Fed. Reg. 44,876 (Oct. 13, 1976)(designating officers of the U.S. Park Police and employees of the National

Park Service.) Carrying out this law-enforcement function can involve "cooperating …. With a State or political subdivision of a State in the enforcement of supervision of the laws or ordinances of the State of Subdivision." 54 U.S.C. § 102701(b)(2)(A); see also D.C. Code Ann. § 5-2-1 (granting the U.S. Park Police the authority to enforce D.C. law).

To protect and preserve the public lands and resources, agency regulations prohibit engaging in disorderly conduct of federal property, 36 C.F.R. § 2.34; failing to abide by "the lawful order of a government employee or agent authorized to maintain order," id., § 2.32(a)(2); destroying or vandalizing property, id § 2.31(a)(3); and obstructing public passageways, id § 2.31(a)(5). The official charge of the park area is permitted to "close all or portion of a park area to all public use or to specific use or activity." Id. § 1.5(a)(1). Any person who "knowingly enters or remains in" a restricted area "where the President .. is or will be temporarily visiting" may be imprisoned for up to ten years.  18 U.S.C. § 1752(a)(1), (c)(1)(B).

## B. Factual Background

Protests that occurred in May 2020, involved "instances of looting and vandalism" and including May 31, 2020 fire "that broke out in the basement o the historic St. John Episcopal Church, adjacent to Lafayette Park" J.A. 143, ¶ 50.  In

response, the D.C. Mayor announced a city wide curfew to combat the violence of these protests which began on June 1, 2020 at 7 p.m. J.A. 143, ¶ 50; J.A. 92, ¶ 104.

Plaintiffs claim and without response restate that as a part of a "continuation of [the ongoing] protests," J.A. 74, ¶ 3, "a large crowd of peaceful demonstrators" had assembled in Lafayette Park about an hour before the citywide curfew on June 1, 2020, J.A. 145, ¶ 53.  Former Attorney General William Barr allegedly arrive at the scene soon afterward and "ordered law enforcement personnel to extend the security perimeter around the White House and clear the streets around Lafayette Park." J.A. 145, ¶ 55.  According to the operative complaints, the dispersal protestors was carried out by federal law-enforcement officers (including U.S. Secret Service, Federal Bureau of Prisons, and U.S. Park Police) as well as military personnel and non-federal law-enforcement officers. See J.A. 86-87, ¶ 67; J.A. 145, ¶ 55.

In general plaintiffs allege that "law enforcement officers" used physical strikes and non-lethal munitions against the crowd to clear the park, see J.A. 88, ¶ 83, J.A. ¶ 89, 88, J.A. 152 ¶ 57, J.A. 152, ¶ 70.  There are few allegations as to the specific defendants in these appeals.  For example, plaintiffs allege that the former Attorney General conveyed the order to clear protestors to Park Police Captain Russell Fennelly. J.A. 145, ¶ 55.  Plaintiffs further allege that the Acting Park Police Chief Gregory Monahan was "responsible for the actions of the U.S. Park

Police Officers," J.A. 78, ¶ 19. And that Park Police Major Mark Adamchik "gave the immediate order" to clear the area.  J.A. 78, ¶ 20; see also J.A. 145-46, ¶ 55. Other defendants are alleged to have been involved in incidents with protestors other than plaintiffs, see J.A. 90-91, ¶ 95,98, J.A. 147, ¶ 57 or the overall effort to disburse people from Lafayette Park, see J.A. 88, ¶ 83, J.A. 140 ¶ 39.

Plaintiffs further allege that just after the protestors were dispersed, the former President "emerged from the White House" and "walked through the now cleared Lafayette Park" with former Attorney General and security personnel. J.A. 149-50, ¶ 63, see J.A. 109, ¶ 203; J.A. 134 ¶ 4.  The former President allegedly traversed Lafayette Park to St. John's Church where he passed for photographs and gave "brief remarks," before returning to the White House. J.A. 109, ¶ 203, J.A. 149-50, ¶ 63.  The federal government installed fencing around Lafayette Park later that night.  See J.A. 137, ¶ 11; J.A. 163, ¶ 100.

As plaintiff's complaint claims, the events at Lafayette Park have received extensive attention from political branches.  Two Park Police officers became "subject of an investigation by the [relevant] Office of Professional Responsibility." J.A. 148, ¶ 58.  The Department of the Interior's Office of Inspector General "launch[ed] an investigation into the United States Park Police's actions in Lafayette Park." J.A. 169, ¶ 112.  And two congressional committees held hearings in which congressmembers "interviewed various witnesses" included

the former Attorney General and Acting Park Police Chief Gregory Monahan. J.A. 169, ¶ 113. "Federal authorities continue to investigate the facts and circumstances surrounding" the events that took place. J.A. 169-70, ¶ 113.

### C. Procedural History and Background

Plaintiffs brought this case against federal officers, MPD Officers, and Arlington County Police officers, J.A. 78-82, ¶ 16-48; J.A. 138-41, ¶ 15-41. The eight individual plaintiffs in the Black Lives Matter D.C. action allege that they participated in Lafayette Park protests and were subject to unlawful dispersion and unreasonable seizure in volition of the First and Fourth Amendments. J.A. 77-78, ¶ 10-15; J.A. 114-16, ¶ 220-30. As relevant here, plaintiffs assert, Bivens claims against former Attorney General William Barr and several U.S. Park Police officers in their individual capacities. J.A. 114-116, ¶¶ 220-30; J.A. 174-75, ¶¶ 136-42.

The federal officers moved to dismiss the Bivens claims against them on the ground that a Bivens remedy is unavailable in this context and, alternatively, that they are entitled to qualified immunity. The district court determined that a Bivens claim should not be recognized in these circumstances and therefore did not reach the arguments regarding qualified immunity and others brought up by Kellenberger in his motion to dismiss. See J.A. 193-94.

Noting the Supreme Court's admonition that expanding individual-capacity damages actions is "disfavored judicial activity," J.A. 194 (quoting *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017), the district court explained that a court's task is to assess whether the case arises "in a new context or involves a new category of defendants, "J.A. 194 (quoting *Hernandez v. Mesa*, 140 S.Ct. 735, 743, 206 L.Ed.2d 29 (2020)), and whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damage remedy." J.A. 195 (quoting Hernandez, 140 S. Ct. at 743).

Applying that framework, the district court explained that the "Bivens claims int these cases- brought under the First, Fourth, and Fifth Amendments - all arise in a new context." J.A. 195.  The court noted that "the Supreme Court has never extended Bivens to a claim brought under the First Amendment" and the circuit precedent is irrelevant because "it is only Supreme Court decision that count when determining whether a Bivens claims arises in a new context." J.A. 195-96.  As to plaintiffs' Fourth and Fifth Amendment claims, the court stressed that "government officers' response to a large protest in Lafayette Square outside the White House" at issue here is "markedly different" from "entering and searching a private apartment to enforce federal narcotics laws" and from "sex-based employment discrimination" at issue in prior Bivens cases J.A. 196-7.

The district court next concluded that special factors counsel against extending Bivens to plaintiff's challenge to decision about "managing cloud activity directly outside of the White House." J.A. 198.  The court highlighted "the country's national-security interest int eh safety and security of the President and the area surrounding the White House." J.A. 197, that is implicated by "the presence of a large crowd of protestors even a peaceful one, near the president." J.A. 198-99.  Allowing this sort of claim to proceed would risk disrupting Congress's considered the recurrent balancing of "the trade-offs between White House and presidential security and protesters' freedoms" thought reports, hearings, appropriations and legislation.  See J.A. 199-201.  AS further reasons not to create Bivens liability, the court noted that plaintiffs had "alternative avenues" to pursue their claims, including that their complaints requested "equitable relief in the form of a permanent injunction." J.A. 201.  Those claims settled, with the government agreement to make change agency policies.

The district court therefore found it "inappropriate to extend Bivens into the new context presented by these cases" and dismissed the Bivens claims against federal officers. J.A. 201.  Plaintiffs sought and obtained final judgment as to these claims. See J.A. 238-42.  These appeals and responses followed.

## SUMMARY OF ARGUMENT

The Appellee adopts the summary argument of the government in its brief. It does add that the main case cited by the Plaintiffs/Appellants, *Quaker Action Gap. v. Morton*, 516 F.2d 717 (D.C. Cir. 1975), is almost completely distinguishable.

## MEMORANDUM OF LAW AND ARGUMENTS

### STANDARD OF REVIEW

De novo review due to the dismal of a *Bivens* action. *True the Vote, Inc., v. Internal Revenue Serv.*, 831 F.3d 551, 555 (D.C. Cir. 2016).

## A.) THE DISTRICT COURT'S DECISION PROPERLY REASONED THAT THE KELLENBERGER CLAIM MUST BE DISMISSED

### 1. PRESIDENTIAL SECURITY, A NEW FACTOR, WARRANTS DISMISSAL

Following Supreme Court, the "Safety of the President …a 'paramount interest,'" and the Nation has "an overwhelming interest in protecting the safety of its Chief Executive." *White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1532-33 (D.C. Cir. 1984); *Watts v. United States*, 394 U.S. 705, 707, 708 (1969).

And, for this safety of the executive branch reason, the *Bivens* remedy may not be expanded.

Remarkably, Appellant claims security of the President of the United States not an issue in this case (Pls. Br. 38).   They ignore the fact that the President of the United States walked in the same park at 7 PM that the "demonstrators" were recently located in and whom "demonstrators" attacked police the evening before and hospitalized officers (Pls Br. 10, see inspector general report ____; Mayor's Order 2020-68 § II ¶ 1 and 2020 § II, ¶ 1.)  These rioters posed a direct threat to the executive branch of the United States.

Appellant does, however, agree that "national security can qualify as a special factor" (Pls. Br. 38).  Here, the government's interest in presidential protections especially acute when the President is about to appear in public, where she faced "the greatest danger …" *In re Sealed Case*, 148 F.3d 1073, 1078 (D.C. Cir. 1998).

Moreover, Appellants wrongly suggest that security threat to executive branch only materialize when the President face a large crowd of "demonstrators" in similar immediate proximity because the special factor analysis must not be conducted at such a "granular level." *Egbert v. Boule*, 142 S.Ct. 1793, 1806 (2022).  Here, we have a President located outside the Whitehouse during the "demonstrators" demonstrating, where a curfew had been put in place due to violence and destruction of property by the "demonstrators" in nights past.   And,

in fact, these groups actually attacked police officers the night before, at, or near the White House.

The Appellants surprising claim that a President of the United States has no threat to her security when she is forced to walk through and part a sea of angry protesters in front of the White House.  This granular argument by Appellants fails specifically because the White House and its surrounding area have more security concerns when a President walks in that area than others rather than insinuate as Appellants have that the President of the United States has no right to her security when she is present at or near the White House.  None of the cases cited by the Appellant related to *Bivens* claims have a situs of the White House with the President walking outside it, which has certainly a higher level of security requirement than a restaurant when the President is walking in that area.

In fact in *Quaker Action Gap. v. Morton*, 516 F.2d 717 (D.C. Cir. 1975), used by the Appellant notes it is a "unique situs" to consider demonstration activity in the White House area and the court went on to say, "Given the uniqueness and importance of the security interest of the protection of the White House as justifying a greater limitation than would be applicable generally to use the public streets and parks, we conclude that the Constitution is not offended by the standard in the regulation, limited as it is (1) to the presence of a clear and present danger, that is (2) confined to the need to protect public safety and public health (including

the public safety the avoidance of disorder. *Quaker* P10).  That decision held that public gatherings shall be prohibited during morning and evening rush hours 36 C.F.R. § 50.19(g)(6) (1973), as cited in *Quaker* (P12.)  It even further limits protests that lasts several days or for a long duration.  And, requires a permit be requested 48 hours before the protest which is found essential by the court (P13).  Further, an emergency withdrawal provision has existed as well, to revoke a permit if a security threat imminent.

Ironically, the court in *Quaker*, contemplated putting up enhanced fencing as a reason to provide for Presidential security which is the case here and a reason the law enforcement had been clearing the area of protesters (P14).   This fencing initially had been erected during Theodore Roosevelts Presidency.

Reiterating, the holding of the court that "to the extent that reliable security can be obtained with stronger fences, greater surveillance, and increased coordination with the District of Columbia police force, there is no reason why it should be obtained through limitations on liberty of speech and assembly.  It is our contemplation that the Park Service will take a hard look at its own procedures to insure the viability of the First Amendment in its park domain."(p15).

Two distinguishing features to our case, which generally make *Quaker's* citation completely distinguishable are (1) It does not rule that the presence of the President should be precluded if a violent protest or any demonstration occurs,

19

making this critical and material fact to void the decision (2) the current "demonstrators" did not apply for a permit with the park police so they could be moved away immediately.

Here, a violent protest occurred within a few feet of the White House and the President who chose to walk into the park area in front of the White House. She does not have to ask permission to move about the general area around the White House. *Quaker* does not preclude her movement during such activities, and requires a permit be issued to secure a right.

And, again, here, the protesters did not have a permit to protest as stated in the complaint.

*Quaker* actually supports the exclusion of protesters in our case because it supports the banning of protest or demonstrations during rush hour. This would include the time the protesters were present in our case.

Finally, taken in the post 9/11 world, security analysis has been heightened around our nations critical locations i.e. Pentagon, White House, House of Representatives, are tantamount to overturning this decision to allow for any request for protesters to locate near the Whitehouse.

## 2. KELLENBERGER ADOPTS THE GOVERNMENT'S ARGUMENT IN TOTAL IN GOVERNMENT BRIEF THAT THE JUDICIALLY CREATED *BIVENS* REMEDY SHOULD NOT BE EXTENDED IN THIS NOVEL CONTEXT

Kellenberger adopts the government argument in total raised in its brief which addresses several parts over the course of 21 pages, (pp 9 to 30).

### 3. KELLENBERGER ONLY ADDRESSES THE CLAIMS RAISED BY THE APPELLANTS BREIF.  ANY OTHERS, WHICH INCLUDE BUT ARE NOT LIMITED TO QUALIFIED IMMUNITY, STANDING AND NECESSARY PARTY TO LITIGATION, NEED NOT BE ADDRESSED.

Plaintiffs' brief raises no issue regarding qualified immunity nor standing, nor necessary party or others raised in Kellenberger motion below which are not at issue of this appeal. See *Fox v. Government of D.C.*, 794 F.3d 25, 29 (D.C. Cir. 2015) (which found that arguments not raised in opening brief are forfeited on appeal).   And, if this court concluded that these issues could be properly implied in this case, the appropriate course would be to remand to the district court to address the qualified immunity and aforementioned ones in the first instance.

## CONCLUSION

The lower court's decision must be upheld.


ZAMPOGNA, P.C.

By: */s/ Christopher Zampogna*
Christopher A. Zampogna
ZAMPOGNA, P.C.
D.C. Bar No.: 44985
1776 K St, NW 700
WASHINGTON, DC  20006
202-223-6635
caz@zampognalaw.com
Attorney for the Plaintiff

## CERTIFICATE OF COMPLIANE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,157 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Christopher A. Zampogna*
Christopher A. Zampogna

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing appeal was served via ECF on all counsel of record on this 13 day of February 2023:

*/s/Christopher A. Zampogna*
Christopher A. Zampogna